## In re State Liquor Store in Butler

*Samuel W. Greer* and *Willis A. MacDonald*, for protestants.
*John D. Meyer*, Special Deputy Attorney General, for Liquor Control Board.
*Zeno F. Henninger, Jr.*, for owner.

WATSON, P. J., December 29, 1933.—This is a protest filed by 15 residents and taxpayers residing within a quarter of a mile of the location of a Pennsylvania liquor store which was located by the Liquor Control Board at 304 North Main Street, Butler, Pa., as provided for by the Act of November 29, 1933, P. L. 15.

The act in question was passed at a special session of the State legislature called for the purpose of regulating the sale of intoxicating liquors within the Commonwealth, due to the repeal of the Eighteenth Amendment to the Constitution of the United States, and is revolutionary in character. Section 3 of the said act provides: "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." Under the provisions of this act, the entire control and regulation of liquor traffic within the Commonwealth is placed in the hands of a Liquor Control Board established by appointment of the Governor, who has the appointive power under the act, and two methods are provided for the sale and dispensing of intoxicating liquor. It provides for the licensing of the sale of intoxicating liquor to be consumed upon the premises in restaurants and hotels, but forbids the sale of any liquor in quantity to be carried away from the hotel or restaurant, and provides that the liquor shall be served only at the tables in the restaurant or hotel where food is served, abolishing and forbidding the sale of liquor over the bar. It also provides for the establishment of liquor stores for the purpose of selling intoxicating liquor in original packages for the purpose of home consumption, forbids the sale of liquor in these stores in any other manner except in original packages, and forbids the drinking or consumption of the liquor on the premises where sold, giving general power to the board in establishing such liquor stores to buy and import liquor, and to control its possession and sale and the places within the municipalities of the Commonwealth where such stores shall be established as provided for by the act.

In section 202 it gives to the Liquor Control Board general power to make regulations, as follows: "The board may, from time to time, make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act. The board shall cause such regulations to be published and disseminated through the Commonwealth in such manner as it shall deem necessary and advisable. Such regulations adopted by the board shall have the same force as if they formed a part of this act." It also provides for the selection of the necessary employes in the conduct of the stores, under strict civil service examination and selection as to character, integrity, and business and educational qualifications.

All this was done with one purpose in view, and that was to keep liquor out of politics and eliminate the possibility of private profit or gain through sale of intoxicating liquor, and thereby obviate the most objectionable features that existed prior to the time that the Eighteenth Amendment to the Constitution of the United States was passed.

In establishing the Pennsylvania liquor stores, the act provides that when the board shall have determined upon the location of a particular store in any municipality, it give notice of such location by public advertisement. If, within 5 days after appearance of such advertisement, 15 or more taxpayers residing within a quarter of a mile of such location shall file a protest with the court of quarter sessions of the county, averring that the location is objectionable because of its proximity to a church, a school, or to private residences, the court shall forthwith hold a hearing, affording an opportunity to the protestants and to the board to present evidence. The protest in this case was duly filed and was in proper form, being based on the three reasons set forth in the act. At the hearing, the protest was abandoned insofar as its location was in close proxim-

ity to schools but it left the other two matters to be determined, to wit, its close proximity to a church and its close proximity to private residences.

The location of the proposed store is on Main Street in the City of Butler, on the west side of the street and three doors north of the northwest corner of the intersection of Main Street with Brady Street. The business section of the City of Butler extends northward about two doors beyond the location of the liquor store, from which point northward the street is entirely occupied by private residences, and on the southeast corner of the intersection of the said street is located the English Lutheran Church. Practically all the protest insofar as the church was concerned was limited to the testimony of but one witness, who testified as to the location of the church and the fact that the church was used not only for its regular church services but was used practically every day by the various organizations within the church, such as missionary societies, young people's societies, etc.; and that the presence of the State liquor store would be detrimental and annoying to the persons using the church for the various functions carried on therein. The testimony on behalf of the protestants as to the residence properties in the near vicinity was that it would cause a congestion of traffic along the street in their vicinity, that the sale of liquor would attract a great many people that otherwise would not frequent the district, and that it would cause drinking and carousing in and about the location and particularly in the alleys and streets of the neighborhood where the liquor would be consumed, causing a nuisance to the people residing nearby.

As we view the problem, the basis of the protests is not necessarily the selling of the liquor itself but the consumption of it in the adjacent neighborhood. Judging from experience in the past, under the old method of dispensing liquor, such a condition could very easily be anticipated, but usually it grew out of the fact that the liquor was consumed in the place of sale, yet there is nothing to prevent the purchaser of liquor, even though he is forbidden to drink it on the premises of the sale, from opening a bottle and consuming it immediately upon leaving the premises; and, while this store is still located within the business district, if such a condition would obtain it would be an annoyance to the persons residing in the near vicinity of the liquor store.

On the part of the Liquor Control Board a number of witnesses were called. The agent of the Commonwealth who selected and recommended the location testified that he had made an examination of about 25 locations within the business district of the City of Butler and that he found this location to be the one most satisfactory from the standpoint of its location, its adaptability to the needs of the store for which it was intended, and also with reference to its proximity to the churches and schools and residences. Several witnesses from the near vicinity were called, who testified that a Pennsylvania liquor store conducted as contemplated under the act would not be an annoyance to the neighborhood nor to the residents therein, any more than would any other character of business, such as a grocery store, drug store, or meat market, and that its presence would not tend to reduce the market value of residence properties in close proximity to the location of the store. Several witnesses were also called to testify as to the operation of this character of store in Canadian provinces where practically the same plan of handling intoxicating liquor is now in force, and their testimony was to the effect that they could see very little difference between it and any other character of business insofar as it made any difference or created any annoyance to the neighborhood, and that there was no more congestion of traffic or congregating of people than would happen in case of any other line of business.

On an examination of the act, at our first reading thereof we felt that the act was very weak in one respect, and that was with reference to the regulation of sales to individuals, in that there was no provision in the act that would prevent the stores from selling liquor indiscriminately to minors, persons of known intemperate habits, and persons under the influence of intoxicating liquor. As we view it, the annoyance to the neighborhood by reason of drinking of the liquor would come from this class of persons, and if it were not safeguarded the fear expressed on the part of the protestants would be quite well founded insofar as there would be an annoyance to the people living in close proximity from the behavior of such classes of persons. The act, however, provides for the making of proper regulations for the sale of liquor in the stores, and knowing the character of men that make up the board, and having an assurance not only from the representative of the Commonwealth who represented the board but also from the board itself, we are satisfied that drastic regulations are being prepared and will be in force at the time the liquor store opens, so that, to a great extent, this condition will be overcome, and there will be little left but the necessary selling transaction in a normal way to persons to whom the liquor can be sold. Even then there will be an occasional instance where someone will possibly make himself a nuisance and a spectacle, but such instances will be reduced to a minimum by reason of the regulation.

The next thing that we have to take into consideration is that it would be difficult to make a store location in the City of Butler that would not have the same effect on some other neighborhood as it would in this neighborhood, if such expectations were at all realized. It would be practically impossible, within the business district of the City of Butler, to locate a store without being in close proximity to a church, a school, or a residence district. The business district of Butler is located almost exclusively on Main Street and extending not more than a block on either side on any of the side streets. School children pass along these side streets and along Main Street, going to and from high school and the various grade schools, in as great a number as they would at the point where the present location is made, and if a store were located in almost any other site we would anticipate that a like protest would naturally follow, and to give heed to all protests simply because the site was in close proximity to a school, a church, or private residences would make it almost impossible to locate a liquor store.

The repeal of the Eighteenth Amendment was a mandate of the people of the Nation to bring back and legalize again the manufacture, sale, and use of intoxicating liquor, and placed the burden of its regulation again upon the several States of the Union. Pennsylvania has met this requirement, met it fearlessly and, as we believe, with the highest ideals to regulate and control it under the police power of the Commonwealth, to protect the health, peace, and morals of the people as well as the public welfare. It has taken the handling of liquor out of private hands so that the private incentive for profit at the expense of public welfare has been largely eliminated; it has severed it from politics so that it will not, if the ideals are followed out, become a political football in the affairs of the Commonwealth.

## Order

And now, December 29, 1933, for the reasons set forth above, we are convinced that it is our duty to overrule the protest and to approve the location of the store at 304 North Main Street, Butler, Pa., and the protest is therefore overruled.

From Thomas H. Greer, Butler, Pa.